S05A0787. RHODES v. THE STATE.
(619 SE2d 659)

HUNSTEIN, Presiding Justice.

Appellant Tammie Lynn Rhodes was convicted of two counts of felony murder and one count of cruelty to children in the beating death of her son, Jacob.[1] She was sentenced to concurrent life sentences on the felony murder counts and a consecutive twenty-year sentence for cruelty to children. She asserts on appeal that the trial court erred in denying her motion to sever and in admitting similar transaction evidence. We affirm; however, because Rhodes could be sentenced as to either count of felony murder, but not both, we vacate and remand for resentencing.

---

[1] The crimes occurred on January 7, 2001. Rhodes was indicted in Jones County for malice murder, two counts of felony murder predicated on the underlying felonies of cruelty to children, and cruelty to children. Rhodes and her co-defendant, Darrell Collum, were jointly tried September 24-29, 2001. On September 29, 2001, she was found guilty of both counts of felony murder and cruelty to children and sentenced to two concurrent life terms of confinement and a consecutive twenty-year term. Rhodes' motion for new trial was filed on October 1, 2001 and denied on December 11, 2003. A premature notice of appeal was filed on September 8, 2003. The appeal was docketed in this Court on January 21, 2005 and orally argued on April 12, 2005.

1. The evidence authorized the jury to find that in November 2000 Rhodes and her three sons moved in with her boyfriend, co-defendant Darrell Collum, and his three daughters. Rhodes and Collum met over the internet and had known each other for only a short time. Within days of moving into Collum's home, 20-month-old Jacob Rhodes started receiving bruises to his head and body. Thereafter, Jacob's leg was fractured to the extent that he could neither walk nor wear a shoe, and he suffered a broken rib. Although both injuries would have been extremely painful, Jacob received no medical attention.

The day before he died, Jacob was seen with new bruises and a black eye, injuries so severe they caused at least one witness to call Rhodes and Collum and demand that they take the child to a doctor. They refused. That evening, Rhodes noticed Jacob's head was swelling. Instead of seeking medical attention, she went to the store to get ice, a steak, and soft drinks. Upon returning home, she and Collum placed Jacob on the couch with several bags of ice around his head and the steak over his face in an attempt to stop the swelling and bruising. Jacob remained in this position until the next afternoon when he was discovered shivering and visibly cold, the ice having melted all around him. At this time, Jacob's hands were clenched shut and his feet were visibly stiff and extended. Again, rather than seek medical attention, Rhodes left to buy a heating pad, which she used to try to warm Jacob. Hours later, after Jacob began vomiting a brown substance and gasping for air, Rhodes and Collum called 911. Despite efforts to resuscitate him, Jacob was pronounced dead shortly after arriving at the hospital.

The medical examiner testified that Jacob had been severely beaten and ultimately died of blunt force trauma injuries to the head. At the time of his death, Jacob's head, face, and scrotum were severely swollen and bruised. He had extensive hemorrhaging and injuries to the brain, bruising to the eyes, abrasions to the chin and mouth and blunt force injuries to the collarbone, chest, abdomen, legs, and arms. Expert testimony revealed that Jacob might have survived had he received appropriate medical attention. Although Rhodes blamed her six- and four-year-old sons for Jacob's injuries, experts opined that the severity of Jacob's injuries were the result of an "adult strength" force.

Viewed in the light most favorable to the verdict, we conclude the evidence was sufficient to enable any rational trier of fact to find Rhodes guilty beyond a reasonable doubt of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The jury found Rhodes guilty of two counts of felony murder (one predicated on maliciously causing cruel and excessive pain to Jacob by injuring him and one predicated on causing cruel and

excessive pain to Jacob by willfully failing and refusing to seek medical attention for his injuries), OCGA § 16-5-1 (c), and cruelty to children in the first degree for maliciously causing cruel and excessive pain to Jacob by injuring him. OCGA § 16-5-70 (b). The trial court sentenced Rhodes to two concurrent life sentences on the felony murder counts. However, Rhodes may not be convicted on both felony murder counts when only one person was killed because such action improperly subjects her to multiple convictions and punishments for one crime. OCGA § 16-1-7 (a); *Smith v. State*, 272 Ga. 874 (6) (c) (536 SE2d 514) (2000). Accordingly, we vacate Rhodes' sentence and remand this case for resentencing in the discretion of the trial court. See *Harris v. State*, 274 Ga. 835 (2) (561 SE2d 73) (2002); *McClellan v. State*, 274 Ga. 819 (1) (561 SE2d 82) (2002). As in *McClellan*, while Rhodes may not be sentenced on both felony murder counts, she may again be sentenced on the separately-indicted cruelty to children charge if it does not merge by law or by fact into the felony murder conviction for which she is sentenced. Id. at 821, n. 2.

3. Rhodes contends that the trial court erred by failing to grant her motion to sever her trial from that of co-defendant Collum. See OCGA § 17-8-4. "It is incumbent upon the defendant who seeks a severance to show clearly that [s]he will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed." (Footnote omitted.) *Green v. State*, 274 Ga. 686, 688 (2) (558 SE2d 707) (2002). Factors to be considered by the trial court are: whether a joint trial will create confusion of evidence and law; whether there is a danger that evidence implicating one defendant will be considered against a co-defendant despite limiting instructions; and whether the defendants are asserting antagonistic defenses. Id. at 687-688.

Rhodes contends that because she was jointly tried with Collum, the trial court limited admission of evidence of Collum's dominance of her and this factor adversely affected her case. The only specific evidence Rhodes identifies as being excluded, however, involved a witness' testimony that he believed Collum wanted his computer returned shortly after the crimes so that Collum could search the internet for another "victim." Such opinion testimony was not admissible in the case at bar, see OCGA § 24-9-65, and Rhodes has made no showing that this testimony would have been otherwise admissible had her case been severed. Moreover, the record reveals that Rhodes presented substantial evidence, both through cross-examination of witnesses and the testimony of an independent expert witness, that Collum possessed a dominant personality and had taken advantage of other women and that Rhodes suffered from battered person syndrome and post traumatic stress disorder. Under these circumstances, we find Rhodes has not shown any prejudice to her case that

might have been avoided by severing the trial. See *Cain v. State*, 235 Ga. 128, 129-130 (218 SE2d 856) (1975).

To the extent that Rhodes' defense may have been antagonistic to that of her co-defendant, that factor in itself is insufficient to warrant the grant of a separate trial absent a showing of harm. *Holmes v. State*, 272 Ga. 517 (2) (529 SE2d 879) (2000). Rhodes has failed to make any showing that antagonism between Collum and herself was harmful to her. Evidence offered by Collum that arguably could be construed as implicating Rhodes was merely cumulative of the State's evidence against her. See *Loren v. State*, 268 Ga. 792 (2) (493 SE2d 175) (1997). Accordingly, the trial court did not abuse its discretion by denying the motion to sever.

4. Nor did the trial court err by allowing the State to present evidence of similar transactions demonstrating Rhodes' neglect and lack of supervision of her children and past Department of Family and Children Services investigations involving injuries to the children. Our review of the evidence reveals that there existed a sufficient connection between the prior acts and the crimes charged and that the evidence presented was probative of Rhodes' course of conduct and bent of mind in the care of her children. Admission of this evidence was proper under the standard set forth in *Williams v. State*, 261 Ga. 640 (2) (b) (409 SE2d 649) (1991).

*Judgment affirmed in part and vacated and remanded in part. All the Justices concur.*

DECIDED SEPTEMBER 19, 2005.

*Hugh D. Ridgway III*, for appellant.

*Fredric D. Bright, District Attorney, Gregory L. Bushway, Assistant District Attorney, Thurbert E. Baker, Attorney General, Raina J. Nadler, Assistant Attorney General*, for appellee.