## S06A2000. COLLUM v. THE STATE.
### (642 SE2d 640)

HUNSTEIN, Presiding Justice.

Appellant Darrell Thomas Collum was convicted of malice murder, two counts of felony murder, and one count of cruelty to children for the beating death of Jacob Rhodes, the 20-month-old son of his girlfriend and co-defendant, Tammie Lynn Rhodes.[1] He was sentenced to three concurrent life terms on the malice murder and felony murder counts, and a consecutive 20-year term for cruelty to children. We affirmed Rhodes's convictions on two counts of felony murder and one count of cruelty to children, but vacated her concurrent life sentences as improperly subjecting her to multiple punishments for the same crime, and remanded for resentencing. *Rhodes v. State*, 279 Ga. 587 (619 SE2d 659) (2005). Here, we also affirm Collum's judgments of conviction, but vacate his sentence and remand for resentencing.

1. In *Rhodes*, we set forth the relevant facts as follows:

> [I]n November 2000 Rhodes and her three sons moved in with her boyfriend, co-defendant Darrell Collum, and his three daughters. Rhodes and Collum met over the internet and had known each other for only a short time. Within days

---

[1] The crimes occurred on January 7, 2001. Collum was indicted in Jones County on August 30, 2001 for malice murder, two counts of felony murder (one predicated on maliciously causing cruel and excessive pain to the victim by injuring him and one predicated on maliciously causing cruel and excessive pain to the victim by willfully failing and refusing to seek medical attention for his injuries), and cruelty to children in the first degree for maliciously causing cruel and excessive pain to the victim by injuring him. Collum was convicted on all counts and sentenced on September 29, 2001 to three concurrent terms of life imprisonment and a consecutive 20-year term. Collum's motion for new trial was filed on October 25, 2001, supplemented on August 8, 2003, and denied on December 11, 2003. A premature notice of appeal was filed on September 10, 2003. The appeal was docketed in this Court on August 1, 2006 and orally argued on January 9, 2007.

of moving into Collum's home, 20-month-old Jacob Rhodes started receiving bruises to his head and body. Thereafter, Jacob's leg was fractured to the extent that he could neither walk nor wear a shoe, and he suffered a broken rib. Although both injuries would have been extremely painful, Jacob received no medical attention.

The day before he died, Jacob was seen with new bruises and a black eye, injuries so severe they caused at least one witness to call Rhodes and Collum and demand that they take the child to a doctor. They refused. That evening, Rhodes noticed Jacob's head was swelling. Instead of seeking medical attention . . . she and Collum placed Jacob on the couch with several bags of ice around his head and [a] steak over his face in an attempt to stop the swelling and bruising. Jacob remained in this position until the next afternoon when he was discovered shivering and visibly cold, the ice having melted all around him. At this time, Jacob's hands were clenched shut and his feet were visibly stiff and extended. Again, rather than seek medical attention, Rhodes left to buy a heating pad, which she used to try to warm Jacob. Hours later, after Jacob began vomiting a brown substance and gasping for air, Rhodes and Collum called 911. Despite efforts to resuscitate him, Jacob was pronounced dead shortly after arriving at the hospital.

The medical examiner testified that Jacob had been severely beaten and ultimately died of blunt force trauma injuries to the head. At the time of his death, Jacob's head, face, and scrotum were severely swollen and bruised. He had extensive hemorrhaging and injuries to the brain, bruising to the eyes, abrasions to the chin and mouth and blunt force injuries to the collarbone, chest, abdomen, legs, and arms. Expert testimony revealed that Jacob might have survived had he received appropriate medical attention. Although Rhodes blamed her six- and four-year-old sons for Jacob's injuries, experts opined that the severity of Jacob's injuries were the result of an "adult strength" force.

Id., 279 Ga. at 588. Jacob had not experienced any unusual injuries prior to the time he moved in with Collum. Collum was alone in the house with Rhodes's three sons prior to the time Jacob's head began to swell and at various times on the night Jacob died. Collum told a co-worker that he was beating the boys. He also told his uncle that he

could not do anything with Jacob and felt like punching him in the head as hard as he could.

Viewed in the light most favorable to the verdict, we conclude the evidence amply enabled a rational trier of fact to find Collum guilty beyond a reasonable doubt of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Collum contends that the trial court erred by denying his motions to sever his trial from that of Rhodes and that numerous violations of his Sixth Amendment confrontation right occurred as a result. See *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). A defendant seeking severance must show clearly that he will be prejudiced by a joint trial; in the absence of such a showing, the trial court's denial of a motion to sever will not be disturbed. *Rhodes*, supra, 279 Ga. at 589 (3).

Rhodes did not testify, but two videotapes of her interviews with investigators from the Jones County Sheriff's Department were played for the jury. The first included statements by Rhodes that Collum was home when Jacob's head began to swell and she came home shortly thereafter; that Collum told her one of the other boys had admitted hitting Jacob's head against the headboard; that he told her the other two boys dropped Jacob on his head; that he told her children have some swelling late at night and early in the morning, and Jacob would be okay; that there was a Department of Family and Children Services report in which the older two boys reported that Collum used a bullwhip on them; that the burn on Jacob's arm happened while she was at work and Collum was at home; that it seemed strange that every time she got home from work there was something else; and that Collum kept the children while she was at work. Similar remarks were made in the second videotape, e.g., that Collum was at home alone with the children and under stress; that he told Rhodes to have one of his daughters babysit on the day before Jacob died rather than Collum's mother because he did not want his mother to see Jacob's black eye; that Collum said he could not handle it; and that Collum refused to take Jacob to the doctor, instead suggesting the home remedies of ice and a steak. Counsel for Rhodes cross-examined one of the investigators regarding another of her statements, eliciting his testimony that Rhodes said her previous statements had been a lie; that she and Collum had orchestrated the lie concerning Jacob's death; that the two had been taking drugs; and that she thought Collum got her out of the house that evening so that he could beat Jacob.

Even assuming, arguendo, that a Confrontation Clause violation occurred as a result of the admission of these statements, "[i]n some cases the properly admitted evidence of guilt is so overwhelming, and

the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." *Schneble v. Florida*, 405 U. S. 427, 430 (92 SC 1056, 31 LE2d 340) (1972); *Mason v. State*, 279 Ga. 636 (2) (b) (619 SE2d 621) (2005). Whether a violation of the Confrontation Clause is harmless depends on a host of factors, including

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. [Cits.]

*Delaware v. Van Arsdall*, 475 U. S. 673, 684 (106 SC 1431, 89 LE2d 674) (1986).

Here, numerous witnesses testified as to the circumstances surrounding Jacob's death, as set forth in Division 1, and were thoroughly cross-examined. The complained-of statements indicating that Collum was alone with Jacob during the time periods at issue and that he was having trouble with Rhodes's boys were cumulative of other properly admitted evidence. See *Dorsey v. State*, 273 Ga. 754 (2) (546 SE2d 275) (2001). Furthermore, it cannot be said that the remaining statements were an important element in the State's case, given the showing that Jacob never suffered unusual injuries prior to moving in with Collum and that Jacob's severe injuries occurred when Collum was his sole adult caretaker. Although circumstantial, the evidence of Collum's guilt was overwhelming and the prejudicial effect of Rhodes's statements to investigators was insignificant by comparison. Accordingly, we conclude that it is clear beyond a reasonable doubt that any *Bruton* violation that may have occurred was harmless. Because Collum has failed to show that he was prejudiced by being tried jointly with Rhodes, the trial court did not abuse its discretion in denying his motion to sever.

3. The State's expert in pediatrics testified that Jacob had been beaten to death and an expert in forensic pathology testified that Jacob's then-healing broken rib was the result of an adult strength force. Collum argues that the trial court erred by denying his related motions for mistrial because this testimony went to the ultimate issue. As to the former testimony, Collum's argument has no merit because there was no attempt to attribute Jacob's death to anything other than being beaten; the ultimate issue was the identity of the person or persons responsible for the beating. The argument also lacks merit as to the latter testimony because the force necessary to

break a young child's rib is an issue beyond the ken of the average layman; thus, such expert opinion is admissible even if it goes to the ultimate issue. See *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981).

Collum also argues that certain comments made by investigators in the course of questioning Rhodes, which were included in the videotaped interviews played for the jury, improperly went to the ultimate issue and to witness credibility.[2] We find no merit in this argument, however, as law enforcement interrogations are, by their very nature, attempts to determine the ultimate issue and the credibility of witnesses.

4. Collum maintains that the trial court erred by permitting the State to introduce certain testimony as similar transaction evidence, namely, that Collum struck one of his sisters with a wrench when she was six or seven years old and he was a teenager; that Collum lost his temper with another elementary school-aged sister and threw her down on the sofa when he was a teenager; and that Collum beat his ex-wife during their marriage.

Before evidence of independent acts may be admitted into evidence, the State must show that it seeks to introduce the evidence for an appropriate purpose; that there is sufficient evidence to establish that the accused committed the independent act; and that there is a sufficient connection or similarity between the independent act and the crime charged so that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. 640, 642 (409 SE2d 649) (1991). " '[A] transaction does not have to mirror every detail in order to authorize its admission; rather, the proper focus is upon the similarities between the incidents and not upon the differences.' [Cit.]" *Daniels v. State*, 281 Ga. 226, 228 (1) (637 SE2d 403) (2006). Where, as here, such evidence is admitted for the purpose of showing bent of mind, a lesser degree of similarity is required than if introduced to prove identity. *Smith v. State*, 273 Ga. 356 (2) (541 SE2d 362) (2001). The evidence at issue dealt with Collum's violent behavior toward family members residing in the same home, even those significantly younger. Because the trial court's determination that the State met the requirements for admission of similar transaction evidence was not clearly erroneous, see id., it will not be disturbed on appeal.

5. Collum contends that the trial court erred by denying his motion for a continuance after receiving amended witness lists and additional documentation from the State shortly before trial. " 'Whether

---

[2] Challenging Rhodes's version of events, investigators commented that it would take someone with a lot of strength to inflict Jacob's injuries; that a four- and six-year-old could not have done it; and that it looked like Jacob had been tortured.

to grant a motion for continuance is entirely within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion.' [Cit.]" *Davis v. State*, 279 Ga. 786, 787 (2) (621 SE2d 446) (2005). See OCGA § 17-8-22. Here, there was detailed discussion regarding the nature of the discovery at issue prior to the trial court's ruling and Collum conceded there was no bad faith in the timing of its delivery. As Collum has failed to demonstrate any harm from the denial of his motion for continuance, we find no error.

6. Because there was a single victim, the trial court erred by sentencing Collum to multiple life terms. *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993) (law does not preclude guilty verdicts for both malice and felony murder, but where there is a single victim, defendant may be sentenced on either but not both). Although Collum's felony murder convictions merged with the malice murder conviction as a matter of law and stand vacated by OCGA § 16-1-7, the cruelty to children felonies underlying the felony murder charges are only vacated if they merged as a matter of fact into the malice murder conviction. *Malcolm*, supra at 372 (5). Because the victim's age is an element of the crime of cruelty to children that is not included in malice murder, either pursuant to statute or as indicted here, the underlying cruelty to children felonies do not merge into malice murder as a matter of fact. *Parker v. State*, 270 Ga. 256 (1) (507 SE2d 744) (1998). Accordingly, we vacate Collum's sentence and remand this case for resentencing.

*Judgment affirmed in part and vacated and remanded in part. All the Justices concur.*

DECIDED MARCH 19, 2007.

*Nicholas E. White, Green B. Moore III*, for appellant.
*Fredric D. Bright, District Attorney, Gregory L. Bushway, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.