## S08A1614. METZ v. THE STATE.
## S08A1615. HICKEY v. THE STATE.
## S08A1616. WILLIAMS v. THE STATE.

(669 SE2d 121)

THOMPSON, Justice.

Darrell Ruben Metz, Brian Davis Hickey, and Kairi Rose Williams were jointly indicted, tried, and convicted of malice murder stemming from the stabbing death of Brenda Byars.[1] Their three appeals have been consolidated for review. Metz appeals in Case No. S08A1614 asserting that the trial court erred in failing to order a severance of defendants, and in giving a jury instruction on accomplice testimony; Hickey appeals in Case No. S08A1615 asserting that the court erred in denying his special demurrer, in denying a motion for mistrial, and in its jury instruction; Williams appeals in Case No. S08A1616 similarly asserting that the trial court erred in denying her motions for severance and for a mistrial. Finding no reversible error, we affirm all convictions.

In the early morning hours, Metz awoke his friend, Chelsi Whitehead, and instructed her that they were leaving Metz's apartment in DeKalb County. Metz drove his car and made a stop to pick up the victim Brenda Byars and co-defendants Hickey and Williams. The group drove to the home of a friend in Dublin, Georgia. During the drive, Whitehead heard Byars demand crack cocaine and threaten to disclose certain information to the police if the others failed to provide the drugs for her.[2] Soon afterward, the same group left in another car with Metz driving. They stopped at a convenience store where Williams, accompanied by Whitehead, purchased a pair of utility gloves. The two women returned to the car and Metz continued driving. Eventually, he pulled to the side of a rural road in Henry County where Hickey and Williams "snatched" Byars from

---

[1] The crimes occurred between December 9 and 10, 2006. A true bill of indictment was returned on March 8, 2007, charging Metz, Hickey, and Williams with malice murder, felony murder, and aggravated assault. Trial commenced on September 10, 2007, and on September 18, 2007, a jury found defendants guilty as charged. On the same day, judgments of conviction were entered and each defendant was sentenced to life in prison for malice murder; the felony murder counts were vacated by operation of law under *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993); and the remaining counts were merged. Metz and Hickey filed motions for new trial on September 24, 2007; Williams filed a motion for new trial on October 5, 2007. The motions were denied on April 9, 2008. Timely notices of appeal were filed. The cases were docketed in this Court on June 6, 2008. Metz and Williams submitted their appeals for a decision on briefs, and oral argument was heard in Hickey's case on October 20, 2008.

[2] It was later established at trial in the context of independent transaction evidence (see Division 2 (b), infra) that on the day prior to Byars' murder, Metz along with others who could not be specifically identified, entered a home where his former girlfriend was staying and shot and killed her and committed an aggravated assault on the homeowner. The State theorized that it was information relating to the prior murder and aggravated assault that Byars was threatening to disclose to the police.

the car and began to beat her. One of the perpetrators produced a knife and stabbed Byars in the stomach. Hickey and Williams attempted to place Byars in the trunk of the car, but when she put up a struggle Metz assisted Hickey and Williams in pulling her from the trunk. She was placed on the ground and Hickey and Williams continued to beat and stab her. One of the perpetrators cut Byars' throat; the body was then dragged into the woods. During this time, Whitehead observed Williams wearing the gloves that she had purchased at the convenience store. Metz drove the group away from the scene. Later, he and Whitehead contacted the police and reported that they had witnessed Hickey and Williams murder Byars. Utility gloves recovered from the scene tested positive for DNA from both Williams and Byars.

*Sufficiency of the Evidence*

1. The evidence was sufficient for a rational trier of fact to have found each defendant guilty beyond a reasonable doubt of the charged offenses. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

We specifically reject Metz's assertion that the evidence against him established nothing more than his mere presence at the scene and thus is constitutionally insufficient to support his conviction.

> Although mere presence at the scene of the crime is insufficient grounds for a conviction, a person can be guilty as a party to the crime if they intentionally aid, abet, encourage, facilitate, assist, or are otherwise concerned in the commission of the acts that constitute the crime. "Aiding and abetting encompasses the concept of helping in the commission of a crime." [Cit.]

*Glenn v. State*, 278 Ga. 291, 294 (1) (b) (602 SE2d 577) (2004). Presence, companionship, and conduct before and after an offense are circumstances from which criminal intent may be inferred. *Simpson v. State*, 265 Ga. 665 (461 SE2d 210) (1995). While it was not established that Metz actually committed the physical act of stabbing the victim, the State presented evidence that he took part in another murder the night before Byars was killed, that Byars threatened to disclose the earlier murder to the police, that Byars was killed to silence her, and that Metz assisted in removing Byars from the trunk of the car and dragging the body into the woods. At the very least, Metz was a party to the crime and may be charged and convicted of its commission under OCGA § 16-2-20 (a).

*Severance of Defendants*

2. Both Metz and Williams assert that the trial court abused its discretion in failing to order a severance of defendants, but for different reasons. See OCGA § 17-8-4 (a).

> "It is incumbent upon the defendant who seeks a severance to show clearly that [the defendant] will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed." [Cit.] Factors to be considered by the trial court are: whether a joint trial will create confusion of evidence and law; whether there is a danger that evidence implicating one defendant will be considered against a co-defendant despite limiting instructions; and whether the defendants are asserting antagonistic defenses.

*Rhodes v. State*, 279 Ga. 587, 589 (3) (619 SE2d 659) (2005). " 'The burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process.' " *Moss v. State*, 275 Ga. 96, 99 (2) (561 SE2d 382) (2002).

(a) Metz maintains that severance was required because the defendants pressed antagonistic defenses — Metz argued that his co-defendants stabbed the victim, while Hickey and Williams accused Metz. But absent a showing of harm, an assertion of antagonistic defenses alone is insufficient to warrant the grant of separate trials.[3] *Appling v. State*, 281 Ga. 590 (2) (642 SE2d 37) (2007); *Rhodes*, supra at 589 (3); *Mason v. State*, 279 Ga. 636 (2) (a) (619 SE2d 621) (2005). To satisfy the prejudice prong, Metz asserts that he was harmed by his co-defendants' attempts to impeach Whitehead because Whitehead's testimony was "exculpatory" as to him. We disagree. Although Whitehead did not place the murder weapon in Metz's hands, her direct testimony clearly implicated Metz as a party to the crime of murder. Thus, Metz was not prejudiced by his co-defendants' attempts to discredit Whitehead on cross-examination.

Nor has Metz demonstrated a violation under *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). "*Bruton* only excludes statements by a non-testifying co-defendant that directly inculpate the defendant." *Moss*, supra at 98 (2). Metz points to

---

[3] Metz does not suggest that the number of defendants was so great as to create confusion, or that the jury was unable to differentiate what evidence specifically related to Metz and what related to the co-defendants.

inconsistent custodial statements made by co-defendant Hickey (who did not testify at trial) to the effect that Hickey had an alibi for the murder. These statements did not directly inculpate Metz and thus did not violate *Bruton*.

Because Metz has not made a clear showing of prejudice and a denial of due process as a result of the joint trial, the trial court did not abuse its discretion in denying the severance motion. *Moss*, supra at 99 (2).

(b) Williams asserts that she was entitled to a separate trial due to the prejudicial effect of evidence that Metz committed an independent murder and aggravated assault in DeKalb County on the day prior to Byars' murder.

At a pretrial hearing to determine admissibility of the independent evidence, the State proffered that Williams and Hickey accompanied Metz to the DeKalb home and that they were all complicit in the murder and aggravated assault that occurred there. At trial, however, the aggravated assault victim, Derrick Ferrell, testified that he was on the porch of his home when Metz approached, accompanied by another man and a woman. He did not observe the faces of the other two intruders and could not positively identify them but their physical characteristics were similar to those of Hickey and Williams, who were known to Ferrell prior to the night of the shooting. Ferrell further testified that Metz shot him in the leg and then kicked in the door and entered his home along with the woman. The second man remained on the porch where he proceeded to pistol whip and beat Ferrell. Ferrell overheard his girlfriend arguing with Metz in the bedroom and he observed the female intruder attempting to carry a safe from his home. After three gunshots were fired in the house, Metz came outside and fired a shot at Ferrell's head, but missed; all three perpetrators then fled from the house.

The trial court gave a limiting instruction prior to the introduction of the evidence and reiterated in its final charge that the jury may consider independent act evidence for the limited purpose of showing motive, but only if the jury first determines that any of the defendants committed the independent act.

Even assuming arguendo that introduction of the evidence was error in that it created a danger that evidence implicating another defendant would be considered against Williams, we hold that failure to grant a severance was harmless in light of the overwhelming evidence of guilt. See *Walker v. State*, 282 Ga. 703 (3) (653 SE2d 468) (2007) (refusal to grant severance did not constitute reversible error where evidence suggestive of co-defendant's bad character, even if improper, was harmless in light of the overwhelming evidence of defendant's guilt); *Collum v. State*, 281 Ga. 719, 722 (2) (642 SE2d 640) (2007) (" 'in some cases the properly admitted evidence of guilt

is so overwhelming, and the prejudicial effect of the [failure to sever] is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper [result] was harmless error' ").

### Special Demurrer

3. Hickey contends that the trial court erred in denying a special demurrer to the indictment.

Hickey and his co-defendants were charged in three counts of the indictment with "stabbing" the victim. Hickey filed a special demurrer requesting notice of whether the State was traveling under the theory that he was the principal, or whether he was being accused as a party to the crime. The State opposed the demurrer and refused to re-indict. Also, the State requested and obtained a jury instruction on parties to a crime. In combination, Hickey submits that he was denied due process of law.

> The true test of the sufficiency of an indictment to withstand a special demurrer "is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. It is useful to remember that the purpose of the indictment is to allow defendant to prepare his defense intelligently and to protect him from double jeopardy."

*State v. English*, 276 Ga. 343, 346 (2) (a) (578 SE2d 413) (2003). The law is "well-settled" in Georgia "that the State is not required to specify in the indictment that it is charging the defendant as a party to the crime." *John v. State*, 282 Ga. 792, 793 (2) (653 SE2d 435) (2007). In addition, the trial court correctly charged the jury on parties to a crime as the charge was a correct statement of the law and was adjusted to the evidence (see Division 1, supra). See *Wade v. State*, 261 Ga. App. 587 (3) (583 SE2d 251) (2003). Since the indictment as drawn allowed Hickey to intelligently prepare a defense and adequately safeguarded him against double jeopardy, it follows that the indictment was legally sufficient and was not subject to a special demurrer. *English*, supra at 346 (2) (a).

### Motion for Mistrial

4. Both Hickey and Williams submit the trial court erred in denying their joint motions for mistrial on *Bruton* grounds when in

opening statement, Metz's attorney commented that Hickey had given conflicting statements to the investigating officers.[4] In denying the motions, the trial court noted that it had previously ruled Hickey's statements admissible on *Miranda* grounds, but it had reserved a ruling on the *Bruton* issue until determining whether Hickey would testify at trial. The court further recognized that the comment in opening statement had not implicated Hickey or Williams, and thus did not constitute a *Bruton* violation, but it admonished all counsel to refrain from any further reference to any defendant implicating another. Because the court determined that the opening statement was not improper, it refused Hickey's request to instruct the jury to disregard it. The court, however, did instruct the jury in its final charge that opening statements are not evidence.

"For the admission of a co-defendant's statements to constitute a *Bruton* violation the statements *standing alone* must *clearly inculpate* the defendant." (Citations and punctuation omitted.) *Thomas v. State*, 268 Ga. 135, 137 (6) (485 SE2d 783) (1997). Hickey's custodial statements that he was not present and that he had an alibi did not inculpate his co-defendants. It follows that the trial court did not abuse its discretion in denying the motions for mistrial on *Bruton* grounds and in refusing to instruct the jury to disregard the comments.

## Jury Instructions

5. Metz asserts that the trial court erred in instructing the jury on accomplice testimony under OCGA § 24-4-8, claiming that the charge tainted Whitehead's credibility and thus prejudiced his defense. The trial court's charge tracked the applicable pattern jury instructions on accomplice testimony and allowed the jury to determine whether any witness was in fact an accomplice whose testimony must be corroborated.

At the conclusion of the jury instructions, the court asked for objections. Counsel for Hickey specifically objected to several charges, but not to the charge on accomplice testimony, and he concluded by stating, "other than that, those are all the objections that I have." Counsel for Metz joined those objections.

The trial of this case occurred in September 2007. Thus, this issue is controlled by the 2007 amendment to OCGA § 17-8-58, effective July 1, 2007. Under subsection (a) of that Code section, a criminal defendant is required to "inform the court of the specific

---

[4] Metz's counsel stated in opening: "there were four versions given to the police at one time. One of these was I wasn't there. I wasn't in Decatur. I've got three alibis I can give you. I wasn't there. That is what Brian Hickey said."

objection and the grounds for such objection before the jury retires to deliberate." Subsection (b) precludes appellate review where there is a "[f]ailure to object in accordance with subsection (a)." As Metz did not specifically object to the charge on accomplice testimony at the conclusion of the jury charge, he has waived his right to urge error on appeal.

6. The trial court refused to give Hickey's requested jury instruction that in assessing the credibility of a witness the jury may consider any possible motive for testifying as well as a promise of leniency. Hickey submits that this charge was authorized because Whitehead, although never charged with murder, was jailed pretrial, admitted being present during the crimes, and was released on a material witness warrant. But there was no evidence that Whitehead testified in exchange for immunity or leniency; therefore, the court did not err in refusing to give the charge. See *Hunter v. State*, 281 Ga. 693 (4) (642 SE2d 668) (2007).

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 3, 2008.

*Gary V. Bowman*, for appellant (case no. S08A1614).
*J. Scott Key*, for appellant (case no. S08A1615).
*Michelle R. Clark*, for appellant (case no. S08A1616).
*Tommy K. Floyd, District Attorney, Alicia C. Grant, Assistant District Attorney, Thurbert E. Baker, Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.