## S11A1526. ARDIS v. THE STATE.
(718 SE2d 526)

THOMPSON, Justice.

Appellant Jason Ardis was convicted of felony murder, aggravated assault, and other related offenses in connection with the shooting death of Annaijh Rolax and the aggravated assault of Timothy Langston.[1] On appeal, Ardis asserts, inter alia, that he was

---

[1] On October 23, 2007, a Fulton County grand jury returned an indictment charging Ardis with felony murder while in the commission of an aggravated assault, felony murder while in possession of a firearm by a convicted felon, aggravated assault of the murder victim, aggravated assault of Timothy Langston, criminal attempt to commit armed robbery, possession of a firearm in the commission of a felony, and possession of a firearm by a convicted felon. Co-defendant Charles West was also charged with felony murder and aggravated assault. The crimes occurred on July 25, 2007. Trial commenced on August 19, 2009, and on August 25, 2009, a jury found Ardis guilty as charged. West was acquitted of all charges. Ardis was sentenced on August 26, 2009 to life imprisonment for the murder of Rolax plus 20 consecutive years for aggravated assault of Langston, five concurrent years for attempt to commit armed robbery, five consecutive years for possession of a firearm during commission of a felony, and a five-year term for the remaining weapons offense. The remaining counts were either merged or vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). Ardis filed a motion for new trial on August 27, 2009, which was amended on November 29, 2010, and denied on April 14, 2011. A notice of appeal was filed on May 10, 2011. The appeal was docketed to the September 2011 term of this Court and was submitted for a decision on briefs.

denied effective assistance of trial counsel. Finding no reversible error, we affirm.

Viewed in a light most favorable to the verdict, the evidence shows that the nine-year-old murder victim was sitting at her computer in the bedroom of her ground floor apartment when a bullet entered through a window and fatally struck her in the head. Another tenant in the apartment complex heard a series of gunshots and went to her window to observe a black car with a red temporary tag leaving the parking lot at a high rate of speed. She saw two occupants in the car, and she identified Ardis as the driver. The apartment maintenance man saw a black Chevrolet Monte Carlo enter the parking lot, and he observed an occupant of the car flag down Timothy Langston, a resident of the complex and a known drug dealer. Minutes later, multiple shots were fired from the Monte Carlo toward Langston as Langston ran from the area; the vehicle then sped away from the parking lot.

Later that day, Ardis met with a close friend and disclosed that he and co-defendant West had driven to the apartment complex in the black Monte Carlo to obtain marijuana, but because he (Ardis) had no money for the purchase, he planned to rob the dealer. Ardis also told his friend that he had taken a 9mm pistol along with him and had fired the weapon in the parking lot of the apartment complex. Ardis asked that friend for money and a ride, explaining that he could not drive the Monte Carlo because a description of the vehicle had been given in connection with the shooting. The friend informed the police about Ardis' disclosures as well as the fact that the Monte Carlo could be located at the residence Ardis shared with his girlfriend, Melle Bazile (known as "Dana"). Dana confirmed that she owned a black Monte Carlo with a temporary tag and that Ardis had access to the vehicle at the time of the shooting. Crime scene investigators recovered eleven spent 9mm shell casings in the parking lot of the apartment complex. It was determined that these, as well as the bullet removed from the murder victim, were fired from the same 9mm handgun.[2]

1. When construed most strongly in support of the verdicts, the evidence was sufficient to enable a rational trier of fact to find Ardis guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Ardis claims that he was denied effective assistance of trial counsel in that counsel failed to object to (a) the admissibility of a custodial statement given by co-defendant West; (b) the admissibility

---

[2] The weapon was never located.

of an out-of-court statement given to police by Langston during the investigation of this case; (c) testimony that guns and ammunition (not alleged to be the murder weapon) were seized from Ardis' home and to the introduction of these items into evidence; and (d) certain testimony by Officer Chambliss as inadmissible hearsay.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficiency so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782 (1) (325 SE2d 362) (1985). The trial court's findings with respect to effective assistance of counsel will be affirmed unless clearly erroneous. *Domingues v. State*, 277 Ga. 373 (2) (589 SE2d 102) (2003).

(a) Co-defendant West gave a lengthy custodial statement which was redacted to eliminate Ardis' name and was read into evidence at trial. West did not testify at trial. Ardis claims that the introduction of this statement into evidence violated his Sixth Amendment right to confront witnesses under *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), and that trial counsel was ineffective in failing to object to its admissibility.

A defendant's Sixth Amendment right to be confronted by the witnesses against him is violated under *Bruton*, "when co-defendants are tried jointly and the testimonial statement of a co-defendant who does not testify at trial is used to implicate the other co-defendant in the crime." *Herbert v. State*, 288 Ga. 843, 848 (5) (708 SE2d 260) (2011). While a non-testifying co-defendant's statement which is redacted so that it eliminates any reference to the defendant may withstand scrutiny under *Bruton*, "statements which despite redaction, refer directly to a person whom the jury may infer to be the defendant run afoul of the confrontation clause." *Davis v. State*, 272 Ga. 327, 331 (6) (528 SE2d 800) (2000). See also *Hanifa v. State*, 269 Ga. 797 (2) (505 SE2d 731) (1998).

Here West's statement was introduced through the testimony of Nicole Redlinger, the lead homicide detective who investigated the case. The detective initially testified that she took a statement from Ardis at the homicide office after administering *Miranda* warnings and obtaining a waiver of rights. She was then asked, "After taking that statement, did you subsequently take a statement from [co-defendant] Charlie Mike West?" The detective answered in the affirmative, and after establishing that *Miranda* warnings had been administered to West and a waiver obtained, a transcript of West's redacted statement was read into evidence. Ardis' counsel expressly agreed to the procedure. There was no limiting instruction requested

or given for the jury to consider the statement only against West.

At first, West volunteered information concerning a different shooting. The following then transpired:

> Detective: So, to your understanding, that's what you are here to discuss.
>
> West: Yes, ma'am.
>
> Detective: Is that the only thing you know about as far as, like, a shooting or anything recently or anything like that?
>
> West: Yes, ma'am.
>
> Detective: Okay. I just want to ask you a few questions. The first thing I want to start with is: do you know who that is?

At that point, the detective testified that she showed West a photograph of "Jason Ardis." The interview continued:

> West: I seen him with somebody, I want to say.
>
> Detective: Is that a better picture?
>
> West: Yeah. I want to say I seen him with a girl named Dana.

The detective then informed West, "We are not here to discuss [the other] shooting. . . . We are here to discuss a shooting that happened off Fairburn Road last week that involved a little girl that got killed." Initially, West denied any knowledge of that crime. The questioning continued:

> Detective: This person here has been picked out by witnesses, okay? That person has been in our office, and now you are in our office. And, you have also been picked out by witnesses.
>
> West: Uh-huh.
>
> Detective: The two of you were in a car together.
>
> West: Uh-huh.

At one point, the prosecutor asked the detective: "Did you tell Mr. West that Jason Ardis had said that he [West] did this crime?" The detective replied in the affirmative.[3] The interview resumed, and West

---

[3] The detective later acknowledged that Ardis did not implicate West, and that the falsehood was used as an investigational technique.

admitted that he had been at Dana's house prior to the shooting; her car was parked outside and she was inside asleep; he got into the front passenger seat of her car; there was a handgun in the pocket of the driver's door; the car was driven to the Fairburn Road apartment complex and parked there; the drug dealer approached the car and shots were fired; and the drug dealer ran from the car to avoid the gunfire. West denied driving the car or firing the gun.

Despite the elimination of Ardis' name from West's statement, it was obvious from the questioning that West was referring to Ardis as the driver of the car who had access to the gun. First, the prosecutor interrupted the reading of the transcript by eliciting testimony from the detective that she showed West a photograph of "Jason Ardis" and asked West to identify him. West stated that he saw "him with a girl named Dana." It had been established previously that Dana was Ardis' girlfriend and that the Chevrolet identified in the parking lot belonged to her. It was also obvious from the statement that the officers were simultaneously interviewing Ardis and they informed West (and the jury) that "Jason Ardis" had implicated West. Thus, despite the redaction, West's statement taken in context, obviously refers to Ardis and leads to the inference that Ardis was the individual in the driver's seat who had access to the gun. To further exacerbate the improper reference, there was no instruction given for the jury to consider the statement only against its maker. Because Ardis "had no opportunity to cross-examine [West's] inculpatory statements against him, his Sixth Amendment rights were violated." *Davis*, supra at 332.

A *Bruton* violation, however, does not always result in harm or reversible error. " '[I]n some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.' " *Collum v. State*, 281 Ga. 719, 721 (2) (642 SE2d 640) (2007), quoting *Schneble v. Florida*, 405 U. S. 427, 430 (92 SC 1056, 31 LE2d 340) (1972). Here numerous witnesses testified to the shooting in the parking lot, including a neighbor who identified Ardis as the driver, others who described the vehicle as matching Dana's, and evidence that Ardis had access to Dana's vehicle at the time the crimes were committed. These witnesses were subject to cross-examination. West's statement, therefore, was cumulative of other properly admitted evidence. In addition, given the overwhelming evidence of Ardis' guilt, including his admission to his close friend that he shot at Langston using a 9mm pistol, any possible *Bruton* error was harmless beyond a reasonable doubt. Id. Thus, Ardis has not shown a reasonable likelihood that the outcome of the trial would have been different had counsel made a proper *Bruton*

objection and succeeded in excluding West's statement. See *Burgess v. State*, 278 Ga. 314 (1) (602 SE2d 566) (2004).

(b) During cross-examination of the lead detective, West's counsel introduced into evidence a statement given by aggravated assault victim Langston to the police on the day of the shooting. Langston died of unrelated causes prior to Ardis' trial. Ardis' counsel specifically stated that he had no objection to the admissibility of Langston's statement. In that statement, Langston disclosed that he was in the parking lot of the Fairburn Road apartment complex at the time of the crimes when a black Chevrolet pulled in and parked; the two male occupants stated they wanted "7 grams" and asked Langston to approach the car, whereupon, "the driver grabbed [him] through the window and pointed a pistol at [him]"; Langston broke free and ran from the area as shots were fired.

In *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), the United States Supreme Court declared that statements which are testimonial in nature and made by an unavailable declarant are inadmissible in criminal proceedings against a defendant who has had no prior opportunity to cross-examine that declarant. Id., 541 U. S. at 68. The Court identified a

> core class of "testimonial" statements, . . . [to include] "ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially."

Id. at 52. Since Langston was interviewed by the police for the purpose of investigating and prosecuting the crimes that took place in the parking lot, his statement was clearly testimonial in nature. And because Langston was an unavailable witness and Ardis presumably had no prior opportunity to cross-examine him, admission of his statement into evidence violated the rule in *Crawford*. As such, trial counsel's failure to attempt to prevent the offending evidence from infecting the trial was deficient under the first prong of *Strickland*. In examining the prejudice prong, we again note that the evidence against Ardis, including his own admission, was overwhelming. In addition, Langston's statement was cumulative of other properly admitted evidence. Accordingly, there is no reasonable likelihood that the outcome of the trial would have been different had counsel made the proper objection.

(c) Trial counsel failed to object to testimony that a gun and ammunition (not alleged to be the murder weapon) were seized from Ardis' home and to the introduction of these items into evidence. The

evidence was found in a closet in Ardis' bedroom and was seized pursuant to a search warrant executed at Ardis' home two days after the shooting. Ardis, who was present at the time, was taken into custody. The evidence was relevant and probative of the charge of possession of a firearm by a convicted felon. An objection to its admissibility would have been fruitless. See generally *Mask v. State*, 309 Ga. App. 761 (2) (711 SE2d 348) (2011). Compare *Nichols v. State*, 282 Ga. 401 (2) (651 SE2d 15) (2007) (error to introduce firearms and ammunition seized from defendant's home where such evidence had no relevancy to the crimes charged).

(d) Even assuming arguendo that trial counsel was ineffective for failing to object on hearsay grounds to testimony of an investigating officer explaining how the investigation progressed, there is no showing of prejudice under *Strickland*.

3. Ardis further submits that the trial court erred in denying his motion for severance. The record reflects that Ardis' counsel made a motion for mistrial or alternatively for severance during cross-examination of the lead detective by West's attorney. This was prompted by questioning concerning the contents of West's custodial statement which had been admitted in its entirety without objection on the previous day of trial. Pretermitting whether the motion was timely, severance was nonetheless not required.

> The question of whether to grant a severance in a joint trial for a capital crime in which the death penalty is not sought is within the discretion of the trial court. In determining whether to grant a motion to sever, a trial court should consider: (1) whether the number of defendants will confuse the jury as to the evidence and the law applicable to each defendant; (2) whether, despite cautionary instructions from the court, there is a danger that evidence admissible against one defendant will be improperly considered against another defendant; and (3) whether the defenses of the defendants are antagonistic to each other or to each other's rights of due process. It is incumbent upon the defendant who seeks a severance to show clearly that he will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed.

*Westmoreland v. State*, 287 Ga. 688, 693 (5) (699 SE2d 13) (2010).

(a) There was no showing that the jury would be confused by the number of defendants or the law applicable to each.

(b) As discussed in Division 2 (a), supra the admission of West's custodial statement violated *Bruton*, supra, especially in light of the

fact that the jury was not instructed to consider the evidence exclusively against West. But as further concluded in Division 2 (a), the *Bruton* violation was harmless beyond a reasonable doubt in view of other admissible evidence, including eyewitness identification testimony and Ardis' admission of guilt. *Schneble*, supra. See also *Mason v. State*, 279 Ga. 636 (2) (b) (619 SE2d 621) (2005); *Dorsey v. State*, 273 Ga. 754 (2) (546 SE2d 275) (2001).

(c) The defenses were not necessarily antagonistic: Ardis denied any involvement in the crimes while West denied being the shooter. Even if it could be said that West and Ardis pressed antagonistic defenses, "an assertion of antagonistic defenses alone is insufficient to warrant the grant of separate trials." *Metz v. State*, 284 Ga. 614, 616 (2) (a) (669 SE2d 121) (2008).

Ardis has not carried his burden of establishing "a clear showing of prejudice and a consequent denial of due process" resulting from the failure to grant a severance. *Westmoreland*, supra; *Mason*, supra. Accordingly, we find no abuse of the trial court's discretion in denying the motion for severance.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 7, 2011.

*Bobby E. Hutson, Jr.*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Paige Reese Whitaker, Marc A. Mallon, Peggy R. Katz, Sheila E. Gallow*, Assistant District Attorneys, *Samuel S. Olens*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, for appellee.