In the Supreme Court of Georgia

Decided:   January 19, 2016

S15A1522.  TYE v. THE STATE.

HINES, Presiding Justice.

In 2008, Cortez Tye was convicted of and sentenced for felony murder and related crimes stemming from a carjacking.[1]   Tye now appeals his convictions and sentences and the superior court's 2014 denial of his motion for new trial, as amended, in which the remaining stated issue was Tye's assertion that the judge who conducted his trial erred in declining to hold a hearing on the

[1]The crimes occurred on November 17, 2006.  On February 29, 2008, a Fulton County grand jury returned a four-count indictment against Tye: Count (1) - felony murder while in the commission of the robbery of Vernon Rouse; Count (2) - felony murder while in the commission of the aggravated assault of Vernon Rouse, by striking him causing him to suffer a neck injury; Count (3) - robbery by force of Vernon Rouse in taking Rouse's motor vehicle; and Count (4) - aggravated assault of Vernon Rouse by striking him with an unknown object causing him a serious neck injury. Tye was tried before a jury commencing on March 10, 2008, and was found guilty on all counts.  By final disposition signed March 12, 2008, and filed March 13, 2008, he was sentenced to life in prison on each count of felony murder to be served concurrently, and 20 years in prison on each of the remaining two counts, to be served concurrently with each other and with the life sentences.  A motion for new trial was filed on March 17, 2008, and amended motions for new trial were filed on March 3, 2014 and March 5, 2014.  The motion for new trial, as amended, was denied on March 14, 2014.  A notice of appeal to the Court of Appeals was filed April 11, 2014, and the appeal was transferred to this Court and docketed to this Court's September 2015 term.   The case was argued orally on October 6, 2015.

issue of Tye's competency to stand trial pursuant to OCGA § 17-7-130[2] even though Tye filed a special pre-trial plea of incompetency. Prior to the denial of the request for a new trial, the superior court conducted a post-conviction hearing on the issue of competency pursuant to *Baker v. State*, 250 Ga. 187 (297

---

[2]OCGA § 17-7-130 (b), in effect from July 1, 2007 to June 30, 2009, provided:

Whenever a plea is filed that a defendant in a criminal case is mentally incompetent to stand trial, it shall be the duty of the court to cause the issue of the defendant's mental competency to stand trial to be tried first by a special jury. If the special jury finds the defendant mentally incompetent to stand trial, the court shall retain jurisdiction over the defendant but shall transfer the defendant to the Department of Human Resources; provided, however, that if the defendant is charged with a misdemeanor offense other than as included in subparagraph (a)(3)(A) of this Code section or a nonviolent offense, the court may, in its discretion, retain jurisdiction over the defendant, and may allow evaluation to be done on an outpatient basis by the Department of Human Resources. If the court allows outpatient evaluation and the defendant is in custody, the court may release the defendant in accordance with the provisions of Code Section 17-6-1, et seq.

Current OCGA § 17-7-130 (b) provides:

(1) If an accused files a motion requesting a competency evaluation, the court may order the department to conduct an evaluation by a physician or licensed psychologist to determine the accused's mental competency to stand trial and, if such physician or licensed psychologist determines the accused to be mentally incompetent to stand trial, to make recommendations as to restoring the accused to competency. If the accused is a child, the department shall be authorized to place such child in a secure facility designated by the department. The department's evaluation shall be submitted to the court, and the court shall submit such evaluation to the attorney for the accused or if pro se, to the accused, but otherwise, the evaluation shall be under seal and shall not be released to any other person absent a court order.

(2) If the accused files a special plea alleging that the accused is mentally incompetent to stand trial, it shall be the duty of the court to have a bench trial, unless the state or the accused demands a special jury trial, to determine the accused's competency to stand trial. Once a special plea has been filed, the court shall submit the department's evaluation to the prosecuting attorney.

2

SE2d 9) (1982), and determined that Tye was competent at the time of his trial. In this appeal, Tye makes no challenge regarding the merits of his convictions and sentences; the appeal focuses solely on the issue of competency to stand trial. For the reasons which follow, we affirm in part, and as discussed in Division 3, we vacate in part and remand the case for resentencing.

1. As noted, Tye has not enumerated as error that the evidence at his criminal trial was insufficient to sustain his convictions; nevertheless, this Court will review the evidence. Such evidence, construed in favor of the verdicts, included, inter alia, that on the date in question Tye and an accomplice approached the victim Rouse while he was in the parking lot of a gas station on Campbellton Road in Fulton County and physically attacked him; in the struggle to gain control of the keys to Rouse's vehicle, Tye hit Rouse with an unknown object, knocking him to the ground and causing impact to the back of his head; Rouse was unable to move; Tye and his accomplice then stole Rouse's vehicle and drove away; several days later, police spotted the stolen vehicle being driven by Tye; after seeing the police, Tye accelerated, turned onto a side street, and then into the parking lot of an apartment complex; once the vehicle stopped, all the occupants ran away; and a police officer chased after the driver, Tye, and

3

eventually found him hiding in a closet of a vacant apartment. Tye admitted in a statement to police that he, along with an accomplice, "came up on" Rouse in an effort to get the keys to his vehicle; that at some point he fell on Rouse; that Rouse was on the ground and never stood up again; and that Rouse asked for help but that Tye and the accomplice drove away in Rouse's vehicle. Rouse was hospitalized and later died of complications from the injuries he sustained in the attack.

The evidence was sufficient to enable a rational trier of fact to find Tye guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. A more detailed procedural history is useful for understanding the present posture of the case and Tye's challenge to his competency. Six days before Tye's trial on the charges, his counsel, Scott Dawkins ("Dawkins"), filed a special plea of incompetency to stand trial and a motion for an evaluation of Tye's competency pursuant to OCGA § 17-7-130. The trial court denied the motion after the State argued that it was a delay tactic and that neither of the two previous attorneys representing Tye had raised any concern about his competency; the case proceeded to trial.

4

More than four years after Tye's convictions and sentencing, his present counsel moved for a new trial based on the alleged erroneous denial of the requested pre-trial competency hearing and arranged for a mental competency examination of Tye by forensic and clinical psychologist Dr. Adriana Flores ("Dr. Flores"). The State offered that the two-prong test in *Baker* provided the method for determining whether the grant of a motion for new trial was warranted. The superior court held a hearing at which it was agreed by the parties to proceed pursuant to *Baker*; both parties conceded the first prong of the test, which was to determine if there was sufficient evidence that a retroactive determination could be made of Tye's competency at the time of his trial in 2008. See *Baker* at 193 (1).

The second prong of *Baker* required a determination of whether Tye was competent at the time of his criminal trial; Tye had the burden to show his incompetency by a preponderance of the evidence. Id. Dr. Flores made her conclusions in a written report and gave expert testimony at the competency hearing; in summary, she opined that Tye was then incompetent and would have been less competent at the time of trial, but that his competency could be "restored" for a new trial through certain State-administered programs.

Dawkins also testified on behalf of Tye. The State's rebuttal expert, Dr. Stacey Marks ("Dr. Marks"), a general and forensic psychiatrist, conducted a retrospective and current competency assessment of Tye and reviewed Dr. Flores's report, the trial transcript, and a Fulton County Jail incident report. Dr. Marks concluded and gave expert testimony that Tye was then competent and would have been competent at the time of his trial in 2008. David Quinn ("Detective Quinn"), the lead detective in the criminal case, also testified on behalf of the State.

Following the competency hearing, the superior court ruled: that the defense had not met its burden under the preponderance-of-evidence standard; that Tye was competent at the time of trial; and that there was no error warranting a new trial based on the trial court's failure to hold the requested pre-trial competency hearing. In pursuing the motion for new trial, Tye's counsel conceded that any other claims for a new trial had to be presented prior to an appeal or they would be waived, and asserted that Tye would be pursuing a new trial only on the issue of competency and the State's procedures for remedying the failure to grant the pre-trial hearing. The superior court thereafter entered the present "Order Denying Motion for New Trial," incorporating its earlier

6

ruling as to the competency claims and clarifying that it found Tye to be competent both at the time of his criminal trial and presently, and that there was no error warranting a new trial from the trial court's failure to hold the requested pre-trial competency proceeding.

a). Tye contends that the superior court erred "by crediting and accepting the testimony of Dr. Marks over that of Dr. Flores, notwithstanding the manifest, dramatic, determinative differences in [their] relative backgrounds and expertise" and "notwithstanding the dramatic and manifest differences between the quality and quantity of investigative steps performed by the two persons." He argues that this Court must reverse the superior court's determination that the defense failed to show, even by a preponderance of the evidence, that he was not competent at the time of trial. But, such argument is unavailing.

As noted, in a competency proceeding, it is the defendant's burden to prove incompetency by a preponderance of the evidence. *Adams v. State*, 275 Ga. 867, 867-868(3) (572 SE2d 545) (2002). And, there is the rebuttable presumption that a person is mentally competent to stand trial. OCGA § 16-2-

3[3]; *Sims v. State*, 279 Ga. 389, 390 (1) (614 SE2d 73) (2005). A criminal defendant is deemed to be competent for the purpose of standing trial if the defendant is capable of understanding the nature and object of the criminal proceedings against him and of assisting his attorney with his defense. *Velazquez v. State*, 282 Ga. 871, 873 (1) (655 SE2d 806) (2008). After the judgment has been made that a defendant is competent to be tried, and there is an appeal of that decision, this Court is to review the evidence in a light most favorable to the State and then to determine whether a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was incompetent to stand trial. Id.

As a threshold matter, Tye's contention of error places emphasis on the relative backgrounds, expertise, and approaches of Dr. Flores and Dr. Marks, seemingly to professionally disparage Dr. Marks, but at the hearing Tye made no objection whatsoever to Dr. Marks being deemed an expert in forensic psychiatry and specifically the issue of competence. Moreover, it was for the

---

[3]OCGA § 16-2-3 provides:

Every person is presumed to be of sound mind and discretion but the presumption may be rebutted.

superior court, as fact finder, to judge the credibility of the opposing expert witnesses. *Crowe v. State*, 277 Ga. 513, 514 (591 SE2d 829) (2004).

As to the substance of Tye's contention of error, Tye relies principally upon the oral testimony and written report of Dr. Flores in support of his claim of incompetency. Dr. Flores testified: in 2012, a year before the competency hearing, she met with Tye for approximately five hours and ten minutes during which time she conducted a clinical interview and some psychological testing; Tye stated that he was "a really good reader," but that when his reading ability was tested, "it wasn't all that great"; Tye had a "full scale IQ of 77" with "perceptional reasoning" at 86 and a "verbal comprehension index of 74," making his verbal abilities similar to that of someone with mild mental retardation; he had a "working memory" score of 77; the full scale score put Tye at the "borderline level of intelligence"; and the results of his achievement test were consistent with his IQ scores. However, Dr. Flores also testified: she was able to test Tye for malingering "because his level of IQ was fine"; Tye was not reporting any current psychiatric problems; his "mental state was good," and "was consistent, actually, with what Dr. Marks had"; verbal rather than non-verbal comprehension was more closely associated with competency, but that

the IQ scores did not "tell [Dr. Flores] whether [Tye is] competent"; while Tye had some deficits in his understanding of the proceedings against him, he understood the roles in 2008 of his defense attorney, the district attorney, and the judge, and that the jury would decide whether he was guilty; in prison, Tye learned about the constitutional rights waived in the context of a plea bargain; he understood he had been charged with murder although he did not initially understand the concept of felony murder; and that Tye had previous criminal cases, i.e., experience with the criminal justice system.

As acknowledged by Dr. Flores, merely having a low IQ may not render an individual incompetent to stand trial. See *Slaughter v. State*, 292 Ga. 573 (740 SE2d 119) (2013). And as stated by Dr. Flores, the evaluation of competency included assessing a defendant's understanding of his case and his ability to assist in his defense. Although she opined that Tye was not competent to assist his defense counsel, Dr. Flores's only stated factual support for such conclusion were circumstances not directly related to Tye's mental state but rather ones regarding the frequency and duration of his contacts with his attorneys. Moreover, she opined that Tye would be "restorable" with just "a little bit of education."

Dr. Flores's oral testimony echoed her written report; however, the report stated additionally: Tye presented to the testing session appropriately and cleanly dressed; he was pleasant and cooperative with all assigned tasks; he was alert and capable of prolonged attention regarding the test items and interview schedule without any evidence of distractibility; he maintained concentration; one test score determined that he did not have any overt cognition problems; he was consistently oriented to person, place, time, and situation; his eye contact was good, his speech was clear, and there were no abnormalities or oddities in movement; his thought process was consistently linear, goal-directed, and logical; he displayed fair short and long term memory; he did not make illogical inferences about everyday normal occurrences; no delusional thoughts were elicited; there were no symptoms of mania; and Tye denied using drugs other than marijuana.

Although not now relied upon by Tye, his former attorney Dawkins also testified on his behalf: Dawkins first met Tye a week before his trial started; no prior attorneys brought up the issue of Tye's competence; and other than the initial request for a competency evaluation, Dawkins did not raise the issue of competency at any time during trial. While Dawkins stated that he and Tye

11

could not discuss basic trial strategy and opined that Tye did not really seem to understand the situation, he stated that this was so because Tye did not grasp the concept of felony murder. But, Dawkins acknowledged that the concept of felony murder is generally difficult for lay people to understand.

In rebuttal, the State presented evidence from Dr. Marks who testified: she did both a retrospective and current competency assessment and put her findings in a written report and addendum; she reviewed Dr. Flores's report, the trial transcripts, an August 2012 incident report involving Tye, and then evaluated him at the Fulton County Jail; the evaluation involved questions aimed at finding out what Tye understood in 2008, his current understanding of the situation, and a clinical assessment of whether there was anything to impede his ability to understand the situation; there were no findings leading to the conclusion that he was not competent to stand trial in 2008, and that currently he was competent to stand trial; she disagreed with Dr. Flores about the threshold of what was required for someone to be competent; the basis of Dr. Flores's conclusions was that Tye did not understand the crime of felony murder, yet exchanges during his police interview indicated it was explained to him numerous times and his responses indicated that he understood; just because

12

Tye did not think that he should be held responsible for the victim's death inasmuch as he merely fell on the victim, that did not mean that Tye should not be held responsible or that it rendered him incapable of understanding his situation; Tye understood his situation; he was capable of rendering his counsel assistance even though he has some communication difficulties; Tye not being well-spoken did not equate to his being incapable of understanding; he has an adequate understanding of his legal condition; there was no reason that Tye was not competent; he was capable of understanding what he was criminally facing; there was nothing to indicate that Tye was not capable of assisting his counsel with respect to locating and examining relevant witnesses, maintaining a consistent defense, listening to witness testimony and informing his lawyer of distortions or misstatements, being able to make simple decisions in response to alternative options explained by his lawyer, and being able to testify in his own defense. Dr. Marks's report concluded, inter alia, that there was no medical support for the conclusion that Tye was not competent to stand trial in 2008, and the reviewed material strongly suggested otherwise; the only evidence raising the issue of competency in 2008 was confined to Tye's statements that he did not understand enough about his legal situation and his attorney's opinion that

13

Tye could not adequately assist his attorney in a defense; given a general presumption of competence and the lack of medical/psychiatric evidence to support a finding of incompetence, Tye probably had a sufficient understanding about his legal situation at the time of trial in 2008 to proceed to trial.

Additionally, Detective Quinn testified that in his interactions with Tye he did not observe anything that led him to believe that he was of "low mental functioning" or that he did not understand what was going on; Tye was respectful, and appeared to understand the situation and his rights; the detective, who was very experienced having interviewed thousands of individuals during his lengthy career, would have noticed something out of the ordinary with Tye; he had no such reservations talking with Tye; Tye was evasive during the initial interview and tried to downplay his criminal involvement; Tye was attentive; the detective felt that "there was nothing" that Tye did not understand about what was said to him; that during the interviews, Tye exhibited an "exceptional command" of English.

The foregoing evidence presented at the competency hearing, viewed in a light most favorable to the State, was sufficient to authorize a rational trier of fact to conclude that Tye failed to prove by a preponderance of the evidence that

14

he was incompetent to stand trial. *Slaughter v. State*, 292 Ga. 573, 579 (4) (740 SE2d 119) (2013).

b). Tye next contends that the superior court erred by finding that his competency could be determined retroactively to the time of trial pursuant to *Baker,* even though there was "no creditable (if any) evidence" that he had been competent at that earlier time.

As the State notes, to the extent that Tye is claiming that it was error to find that his competency could be determined retroactively, which is the first hurdle of *Baker*, Tye expressly conceded, and indeed urged, that his competency at the time of trial could be retroactively determined and that there would be sufficient evidence for the superior court to make such determination. Furthermore, Tye presented evidence at the competency hearing, and on which he now relies in this appeal, that he was in fact incompetent at the time of his criminal trial. Even assuming arguendo that the finding that Tye's competency in 2008 could be determined at the post-trial hearing was erroneous, such finding and the consequent hearing in the matter were induced by Tye's own actions; therefore, he has waived his right to complain on appeal about hearing the issue of his competency pursuant to the procedure in *Baker*. *Spears v. State*,

296 Ga. 598, 604 (4) (769 SE2d 337) (2015). Indeed, a party cannot complain on appeal about an alleged error that the party helped induce. Id.

What is more, to the extent that Tye is claiming in this enumeration of error that the superior court erred in accepting the State's evidence over his own, such contention has been determined to be without merit. See Division 2 (a), supra.

c). Tye next argues that because of "the compelling equities in [his] case arising under the unusual circumstances of [his] case" and in consideration of its "Constitutional context," the superior court should have exercised its discretion to order that he be given a new trial after undergoing a State-administered competency restoration program. He criticizes the reliance on *Baker* for the outcome of the competency issue. But, here again Tye is taking issue with the very procedure that he urged be used. See Division 2 (b), supra. What is more, Tye has failed to provide any meritorious basis for overturning the procedure established in *Baker*, and we decline his invitation to do so.

3. Although this Court finds no error in the jury's verdicts or any merit to Tye's competency challenge, there is error with regard to Tye's sentences. As

16

set forth in footnote 1, supra, the trial court imposed a life sentence for each of the two indicted counts of felony murder, to be served concurrently; however, Tye may not be sentenced on both felony murder counts when only one person was killed inasmuch as this improperly subjects him to multiple convictions and punishments for one crime. OCGA § 16-1-7 (a); *Rhodes v. State*, 279 Ga. 587, 589 (3) (619 SE2d 659) (2005). Consequently, Tye is to be resentenced on only one felony murder count, in the discretion of the trial court. *Rhodes v. State* at 589 (3). And, inasmuch as the sentences imposed for the remaining two underlying crimes were to be served concurrently with those improperly given for the felony murder counts, and thus, are part of the same sentencing scheme, Tye must be resentenced on these counts as well.

In summary, the judgment denying Tye's motion for new trial, as amended, and Tye's judgments of conviction are affirmed; the sentences imposed on Tye are hereby vacated and the case is remanded to the trial court for resentencing in accordance with this opinion.

Judgments affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.