303 Ga. 314
FINAL COPY

S17A1743. JENKINS v. THE STATE.

HINES, Chief Justice.

Clarence Jenkins, Jr. ("Jenkins") appeals his convictions and sentences for felony murder, possession of a firearm during the commission of aggravated assault, and possession of a firearm during the commission of  aggravated battery, all in connection with the shooting death of his 22-year-old son, Chavarious Jenkins ("Chavarious").  For the reasons that follow, we affirm in part, vacate in part, and remand for resentencing.[1]

[1] The crimes occurred on November 11, 2012.  On November 13, 2013, a Clayton County grand jury indicted Jenkins for felony murder while in the commission of aggravated assault, felony murder while in the commission of aggravated battery, aggravated assault, aggravated battery, possession of a firearm during the commission of aggravated assault, and possession of a firearm during the commission of aggravated battery.  Jenkins was tried before a jury August 19-28, 2014, and found guilty of all charges.  On September 2, 2014, Jenkins was sentenced to life in prison for felony murder while in the commission of aggravated assault, a consecutive sentence of five years in prison for possession of a firearm during the commission of aggravated assault, and a consecutive sentence of five years in prison for possession of a firearm during the commission of aggravated battery; the remaining charges either merged with a crime for which a sentence was entered or were vacated by operation of law.  See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993).  On September 22, 2014, Jenkins filed a motion for new trial, which he amended on April 27, 2015, again on May 26, 2015, and finally on June 24, 2015; the motion, as amended, was denied on June 20, 2016.  Jenkins filed a notice of appeal on June 27, 2016; his appeal was docketed in this Court for the August 2017 term and orally argued on November 13, 2017.

Construed to support the verdicts, the evidence showed that on November 11, 2012, Jenkins, Chavarious and Karl Cotton — a cousin of Jenkins — watched a football game and drank beer at a friend's home; they then went to Jenkins's house, which he shared with his fiancée, Latrece Whitfield. There, Chavarious said he wanted to become engaged to marry, and he and Jenkins argued; Jenkins said he should "get his life together" and should buy a car before an engagement ring. The men began to argue over their financial history and shoved one another; in anger, Chavarious punched a hole in a wall of the house. Cotton and Whitfield broke up the altercation, pushed the men apart, and Chavarious went into the living room. Chavarious "kept running his mouth" and Jenkins left the house; Jenkins returned a minute later, carrying a handgun, and went into the living room.

While Cotton was also in the living room, Jenkins stated to Chavarious "I'll f**king kill you for disrespecting me in my house" and, at a close distance, pointed the pistol at Chavarious's head; Chavarious attempted to push the pistol away from his head and backed up; the two men fell over the arm of a sofa and onto it; Cotton heard a gunshot; and a projectile struck Chavarious in the head.

Jenkins then placed the pistol on a counter, went to the sofa, and held Chavarious. Jenkins said to Cotton, "help me, I don't want to go to jail." At that point, Cotton left the house, and Whitfield, who went into the living room after the gunshot, called 911.[2]

The first officer to arrive at the scene in response to the 911 call saw Jenkins on the sofa; Chavarious was on his lap, bleeding profusely from a gunshot wound to the head. A Glock pistol that proved to be the fatal weapon was on the nearby counter. The trigger pull on the Glock was five-and-a-half pounds; it could not be fired by dropping or throwing it. Two days after the shooting, Chavarious died from the gunshot wound to his head.

1. Jenkins does not contest the legal sufficiency of the evidence establishing his guilt of the charges for which he was convicted. Nevertheless, in accordance with this Court's general practice in appeals of murder cases, we have reviewed the record and conclude that the evidence at trial authorized the jury to find Jenkins guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560)

---

[2] Cotton told law enforcement officers who arrived at the house that he was outside the house when he heard a gunshot and entered it; Cotton testified at trial that this was not true and that he originally hoped to avoid involvement in the shooting's aftermath.

(1979).

However, our review of the record reveals that Jenkins received a sentence of five years in prison for the crime of possession of a firearm during the commission of aggravated assault, as well as a sentence of five years in prison for the crime of possession of a firearm during the commission of aggravated battery. See footnote 1, supra. But, the underlying crimes for each possession charge were committed on the same victim, as part of the same fatal encounter, and the possession charges thus merged with each other. See *Smith v. State*, 297 Ga. 268, 269 (1) (b) (773 SE2d 269) (2015); *Gibbs v. State*, 295 Ga. 92, 96 (2) (757 SE2d 842) (2014). Consequently, the case must be remanded so that Jenkins may be resentenced on only one of the possession counts, in the discretion of the trial court. See *Tye v. State*, 298 Ga. 474, 481 (3) (782 SE2d 10) (2016).

2. Jenkins told a law enforcement officer who arrived at his house a few minutes after the 911 call was placed that he was showing Chavarious his handgun when it accidentally discharged. The State moved in limine to exclude the defense from introducing evidence of Jenkins's statement as inadmissible hearsay. Outside the jury's presence, Jenkins proffered the officer's testimony

that: he was the first to arrive at the house in response to the 911 call; he arrived two or three minutes after being dispatched; he took the pistol that was on the counter and placed it in his police vehicle, where he left it; other emergency personnel soon arrived and several medical technicians began attending Chavarious; he did not engage Jenkins in discussion until Chavarious had been moved to the floor; Jenkins's clothes were bloodied and Jenkins had not washed his hands when he spoke with him; he had no recollection whether Jenkins was calm during their talk and did not make any written note of any observation regarding Jenkins's demeanor; and Jenkins said that he was showing Chavarious the pistol and it went off accidentally.

The trial court granted the State's motion and excluded the evidence of Jenkins's statement that he was showing Chavarious the pistol when it accidentally fired. Jenkins contends that this ruling was error and that the evidence should have been admitted under the "excited utterance" exception to the hearsay rule, which is found in OCGA § 24-8-803 (2).[3] A trial court's

---

[3] OCGA § 24-8-803 provides in pertinent part:

The following shall not be excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

(2) **Excited utterance.** A statement relating to a startling event or condition made while the declarant was

5

decision to admit evidence is reviewed for an abuse of discretion. *Pierce v. State*, 302 Ga. 389, 391 (1) (807 SE2d 425) (2017). OCGA § 24-8-803 (2) was enacted in 2011 as part of our new Evidence Code, much of which was borrowed from the Federal Rules of Evidence. *Timmons v. State*, 302 Ga. 466, 468 (2) (a) (807 SE2d 363) (2017).

> "And where the new Georgia rules mirror their federal counterparts, it is clear that the General Assembly intended for Georgia courts to look to the federal rules and how federal appellate courts have interpreted those rules for guidance." [Cit.]

*Pierce*, supra at 392 (1) (a).

Like OCGA § 24-8-803 (2), Rule 803 of the Federal Rules of Evidence creates an exception to the hearsay rule of exclusion for "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803 (2). As the United States Supreme Court has observed, the basis for the excited utterance exception to the hearsay rule

> is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the

under the stress of excitement caused by the event or condition[.]

6

statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous. [Cits.]

*Idaho v. Wright*, 497 U. S. 805, 820 (110 SCt 3139, 111 LE2d 638) (1990).

Further, the justification for the exception "derives from the teaching of experience that the stress of nervous excitement or physical shock 'stills the reflective faculties,' thus removing an impediment to truthfulness. [Cits.]" *United States v. Sewell*, 90 F3d 326, 327 (II) (8th Cir. 1996). Accordingly, this Court has noted that it is " '[a] statement relating to a startling event or condition made while the declarant was *under the stress of excitement caused by the event or condition*' [that] may be admitted into evidence under the excited utterance exception to the rule against hearsay. [Cit.]" *Robbins v. State*, 300 Ga. 387, 389 (2) (793 SE2d 62) (2016) (Emphasis in original.) Thus,

> [w]hile the declarant must still be under the stress or excitement that the startling event caused, the excited utterance need not be made contemporaneously to the startling event. It is the totality of the circumstances, not simply the length of time that has passed between the event and the statement, that determines whether a hearsay statement was an excited utterance. [Cits.]

Id. at 389-390.

Although the passage of time between the event and the declarant's

statement is not dispositive as to the admissibility of the statement, the trial court recognized that it is relevant to the critical inquiry — whether the declarant is still in a state of excitement resulting from that event when the declaration is made. See *United States v. Stepherson*, 383 Fed. Appx. 853, 855 (I) (11th Cir. 2010). And in that regard, even a brief period of time can provide a declarant an opportunity to couch a statement in such a way as to best serve his interests. See *Sewell*, supra. Here, not only was there a passage of time sufficient for Jenkins to formulate a specific version of the events to his advantage, but there was evidence supporting an inference that he actually did so, when he earlier asked Cotton to help him, and said he did not want to go to jail.[4] Conversely, there was no evidence presented to the court of Jenkins's words or actions that showed he was actually experiencing stress or excitement at the time of his statement to the officer so as to eliminate "the possibility of fabrication, coaching, or confabulation [and] provide sufficient assurance that the statement [was] trustworthy and that cross-examination would be superfluous." *Wright*, supra.

---

[4] Cotton's testimony was complete before the proffer of the evidence regarding Jenkins's statement.

Given the totality of the circumstances, the trial court did not abuse its discretion in excluding evidence of Jenkins's statement to the responding officer from being placed before the jury on the basis that it was hearsay that did not fall under the exception set forth in OCGA § 24-8-803 (2).

3. Jenkins contends that his trial counsel failed to provide effective assistance in that counsel did not object to the trial court's failure to give a jury instruction that Jenkins requested. In order to prevail on any such claim, he must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case, id. at 784, and decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no

competent attorney would have followed such a course. *Redding v. State*, 297 Ga. 845, 850 (5) (778 SE2d 774) (2015). To meet the second prong of the test, Jenkins must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. *Smith*, supra at 783. "'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Jenkins requested the court instruct the jury in the language of the pattern jury instruction on prior statements of a witness. That pattern charge asserts:

> Your assessment of a trial witness's credibility may be affected by comparing or contrasting that testimony to statements or testimony of that same witness before the trial started. It is for you to decide whether there is a reasonable explanation for any inconsistency in a witness's pre-trial statements and testimony when compared to the same witness's trial testimony.

Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.31.47 (4th ed. 2007, updated January 2017). The trial court did not give the requested instruction, stating during the charge conference that the concept was covered elsewhere in its instructions. The court then gave the parties written copies of

its intended jury instructions, and recessed for the night.

The next morning, the court gave its charge to the jury, including instructions on the law regarding the jury's role in resolving conflicts in the evidence, assessing the credibility of witnesses, and impeachment of witnesses. In particular, the court instructed the jury that it could

> determine whether there was evidence that a witness testified falsely about an important fact during the course of the trial as opposed to some other time before this trial. In doing so, you may make a determination whether that the statement [sic] was because of an innocent lapse of memory or an intentional attempt to deceive. You should consider all the facts and circumstances of any prior statements.

After the court's instructions, trial counsel did not object to the failure to give the requested charge.[5]

During the hearing on the motion for new trial, trial counsel testified that he did not object to the failure to give his requested instruction as he believed that, in light of the instructions given, the requested charge would have been surplusage. Jenkins asserts that trial counsel's assessment in this regard is

---

[5] At the end of the charge conference, counsel stated that he wished to go on the record as objecting to the court's failure to instruct the jury on the law of accident. At the conclusion of jury instructions, counsel stated that there were no objections "[o]ther than that what was published before the court before we got started."

"patently unreasonable," *Redding*, supra, because the given instruction referred to whether "a witness testified falsely about an important fact during the course of the trial as opposed to some other time before this trial"; his contention at trial was that Cotton testified falsely during the trial, which he claims was shown by Cotton's statements to officers at the scene of the crime, which were not *testimony* "during the course of the trial as opposed to *some other time* before this trial," but which were merely out-of-court statements.

Pretermitting whether it was patently unreasonable to fail to object to the charge as given, Jenkins does not show prejudice resulting from the decision. Cotton was extensively cross-examined about his statements to law enforcement officers at the scene of the shooting, including his statement that he was not inside the house when the shooting occurred. See footnote 2, supra. Jenkins presented the testimony of one of the officers to whom Cotton made such statement and presented Whitfield's testimony that, when she heard the gunshot, she went from the kitchen into the living room and saw Jenkins and Chavarious there, but could not recall whether she saw Cotton; she also testified that Cotton told her he was outside at the time of the shooting. Considering the evidentiary exploration of Cotton's initial statements and the instructions given to the jury,

12

Jenkins fails to show that there is a reasonable probability that the result of the trial would have been different had the exact language he requested been given. *Smith*, supra. See also *Mullins v. State*, 299 Ga. 681, 690 (4) (791 SE2d 828) (2016); *Mohamed v. State*, 276 Ga. 706, 719 (4) (583 SE2d 9) (2003).

Judgments affirmed in part, and vacated in part, and case remanded for resentencing. All the Justices concur.

Decided March 15, 2018.

Murder. Clayton Superior Court. Before Judge Collier.

Brian Steel, for appellant.

Tracy Graham Lawson, District Attorney, Elizabeth A. Baker, Jay M. Jackson, Elizabeth Rosenwasser, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, S. Taylor Johnston, Assistant Attorney General, for appellee.