305 Ga. 318
FINAL COPY

S18A1045. McCORD v. THE STATE.

ELLINGTON, Justice.

Following a bench trial, Clarence McCord was convicted of malice murder, feticide, and tampering with evidence in connection with the stabbing death of KeJuan Hall and her unborn child.[1] On appeal, he contends that his convictions should be reversed because the trial court erred in admitting into evidence witness statements in violation of the Confrontation Clause of the

_____

[1] The crimes occurred on December 30, 2010. On March 1, 2011, an Athens-Clarke County grand jury indicted McCord and his co-defendant Shameeka Watson for malice murder, felony murder predicated on aggravated battery, felony murder predicated on aggravated assault, aggravated battery, aggravated assault, burglary, kidnapping with bodily injury, feticide, and two counts of tampering with evidence. Initially, the State sought the death penalty; however, the State agreed not to pursue the death penalty in exchange for McCord waiving his right to a jury trial. Following a bench trial held on August 1-4, 2016, McCord was found guilty on all counts except burglary and kidnapping. McCord was sentenced to life without parole for murder, life imprisonment for feticide (to run concurrent with malice murder), and ten years' imprisonment for each count of tampering with evidence, the sentences to run concurrent with each other but consecutive to the life sentences. The remaining counts were either merged or vacated by operation of law. McCord filed a timely motion for a new trial on August 9, 2016, which he later amended on January 8, 2018. Following a hearing, the trial court denied the motion as amended on February 26, 2018. McCord filed a timely notice of appeal, and his case was docketed in this Court for the August 2018 term and submitted for decision on the briefs.

Sixth Amendment to the Constitution of the United States and Georgia's evidentiary rules concerning the admission of hearsay testimony. Finding no reversible error, we affirm.

Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. On December 30, 2010, Hall was working at the Golden Pantry convenience store on Atlanta Highway in Athens. Shortly before 11:00 p.m., while she was in the back office of the store, Hall was stabbed 31 times — 29 times with a bladed instrument and twice with a thin, cylindrical object, like an ice pick — and died within minutes from blood loss. The attack also resulted in the death of Hall's unborn child. About 15 minutes after the attack, two store customers, Doni Carnes and Jeffrey Collins, discovered Hall's body and called the police.

When the police arrived at 11:15 p.m., Carnes and Collins were standing outside the store, waiting for them. Carnes told the police that he was the 911 caller. Carnes said that, when he arrived at the store, the lights at the gas pumps were off, but the store was open. He went inside, but he saw no employee. He used the restroom and then walked outside, where he met Collins. Carnes told the police that Collins told him that he had been to the store earlier, had seen a

2

man and a woman in the store, had heard a "ruckus" in the back office, and that he thought something was wrong. Carnes said Collins walked to the back office of the store, where he found Hall's body. Collins ran back to Carnes, hysterical and shouting, "She's dead!"

Collins, who was upset and crying when the police arrived, told responding Officer Michael Poole that he had been in the store earlier that night, panhandling for money, cigarettes, and alcohol, and that Hall had been nice to him. He said that, during his previous visit to the store, he saw a man and woman with Hall and that the man was arguing with Hall. Collins said that the man gave him a pack of cigarettes and told him to go elsewhere for alcohol. Collins said that he saw Hall and the man go into the back office; moments later, he heard a loud banging. The woman told Collins that "they are either fighting or having sex." After the scene had been secured, Officer Gene Davis also spoke with Collins, who by this time had been seated in the back of a patrol car. Collins repeated his account of what he had seen and gave the officer the pack of cigarettes that the man had given him.

The State also presented three witnesses who each testified about what they observed at the Golden Pantry near the time of the murder. Around 11:00

3

p.m., a woman stopped at the store to buy a bottle of water. She spoke briefly with Hall and, on her way out, she saw a man and a woman "hanging out" by the soda fountain area of the store. They did not appear to be shopping. She described the couple to the police and identified McCord in court as the man she had seen. Another woman stopped by the store around the same time, but did not see the clerk. She noticed that the lights at the gas pumps were off. As she walked up to the store, a man stopped her, saying that the store was closed. He stood outside the store, watching her until she drove away. She later described the man to a police sketch artist, and that drawing was admitted in evidence. Finally, a man stopped by the store shortly before 11:00 p.m. and found that the gas pump lights had been turned off. He saw a man locking the store doors from the inside and a woman standing toward the back of the store near the office. The witness identified McCord in court as the man that he had seen.

The officers processing the crime scene collected blood-spatter evidence from several locations inside and outside the store. They recovered shoe prints from the office where the body was found and from behind the store's front counter. They also gathered fingerprints, a bloody vinyl glove, bloody wipes, a container of wipes, cigarette packs, a trash can liner, the victim's empty purse,

4

and other items that they suspected had been touched by the killer. Police determined that the shoe print was made by a Reebok Rbk Flash Hexalite sole. The police were not able to recover any video surveillance from the store because the store's video recorder had been taken. Surveillance video from a nearby business was too low-resolution to show who had entered the store, but it did reveal that the store's gas pump lights were turned off at 10:52 p.m.

The day after Hall's murder, a detective formally interviewed Collins. The video-recorded statement was admitted for the court's consideration. During the interview, Collins contradicted many of the statements that he had made the night before, prompting the detective to comment sarcastically to a fellow officer during the interview that Collins "was going to be a great witness" and that he had "some issues."

On February 2, 2011, the police received a tip that led them to McCord and Shameeka Watson. McCord told the police that he had never been in the Golden Pantry where the murder occurred. As the police spoke with McCord, they noticed that he had cuts on his hands and was wearing Reebok shoes that appeared to have been painted black with a marker. Contending that they knew nothing about the murder, McCord and Watson allowed the police to take cheek

5

swabs from them for DNA analysis.

A GBI forensic biologist, who analyzed McCord's DNA profile and compared it with DNA evidence extracted from blood recovered from the scene, testified as follows. Blood samples taken from the wipes container, the floor behind the counter, the rim of the trash can, and from the parking lot showed the DNA profile of two individuals: McCord, primarily, and to a lesser extent, Hall. Although the blood on the vinyl glove was mostly the victim's, a small amount of McCord's blood was also present. McCord's blood was also on a pack of cigarettes. McCord's fingerprints were found on the front door of the store and on cigarette packs left at the scene.

McCord testified at trial, admitting that he was present during the murder, that several people tried to come inside the store while he was there, that he gave Collins a pack of cigarettes, that he stole the store's surveillance video recorder, that he disposed of the murder weapon, and that he had tried to clean up or conceal blood evidence. He contended, however, that Watson killed the victim in a fit of jealous rage because he had been chatting with Hall. He claimed that his hands had gotten cut when he tried to stop Watson's attack. He also testified that the bloody glove found at the scene was his, and that he had taken it into the

6

store with him.

1. McCord does not dispute the legal sufficiency of the evidence supporting his convictions. Nevertheless, as is this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational factfinder to find McCord guilty beyond a reasonable doubt of malice murder, feticide, and tampering with evidence. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It was for the [factfinder] to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)).

2. McCord contends that the trial court erred in admitting, over objection, two groups of statements made by Collins at the crime scene: (a) he challenges statements Collins made to police officers on Confrontation Clause and hearsay grounds; and (b) he challenges statements Collins made to Carnes solely on

hearsay grounds.[2] Both Carnes and Collins died prior to trial. Their statements were admitted through police witnesses and, in part, through recorded statements.

(a) The Confrontation Clause[3] "imposes an absolute bar to admitting out-of-court statements in evidence when they are testimonial in nature, and when the defendant does not have an opportunity to cross-examine the declarant." (Citation and punctuation omitted.) *Jackson v. State*, 291 Ga. 22, 24 (2) (727 SE2d 106) (2012); see also *Crawford v. Washington*, 541 U. S. 36 (124 SCt 1354, 158 LE2d 177) (2004). "A statement is testimonial if its primary purpose was to establish evidence that could be used in a future prosecution." (Citation and punctuation omitted.) *Favors v. State*, 296 Ga. 842, 845 (2) (770

---

[2] In his initial appellate brief, McCord also challenged the admission of statements Collins gave to the detective in the recorded interview conducted at the police station the day after the murder, statements that were initially excluded prior to trial but which were ultimately admitted at trial at the State's request pursuant to the "rule of completeness" after defense counsel questioned the detective at length about his statements during the interview. In a supplemental brief, McCord withdrew this second claim of error with respect to these statements, conceding that any error in the admission of the evidence had been "waived at trial." Consequently, we do not address that claim of error.

[3] "The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Maryland v. Craig*, 497 U. S. 836, 844 (II) (110 SCt 3157, 111 LE2d 666) (1990).

SE2d 855) (2015). Further, although the admission of evidence in violation of the Confrontation Clause is error of constitutional magnitude, "it can be harmless error if the State can prove beyond a reasonable doubt that the error did not contribute to the verdict, such as when the evidence at issue is cumulative of other properly-admitted evidence or when the evidence against the defendant is overwhelming." (Citation and punctuation omitted.) *Davidson v. State*, 304 Ga. 460, 470 (4) (819 SE2d 452) (2018). Once a determination is made that a statement is nontestimonial in nature, "normal rules regarding the admission of hearsay apply." (Footnote omitted.) *Pitts v. State*, 280 Ga. 288 (627 SE2d 17) (2006). "A trial court's decision to admit evidence is reviewed for an abuse of discretion." (Citation omitted.) *Jenkins v. State*, 303 Ga. 314, 316 (2) (812 SE2d 238) (2018).

Following a pretrial hearing on McCord's motion to exclude Collins's statements to responding law enforcement on Confrontation Clause and hearsay grounds, the trial court first concluded that Collins's statements made at the scene to Officers Poole and Davis were not testimonial because, although they were made during the course of a police investigation, they were made "with the primary purpose to assist police in the context of an ongoing emergency."

9

Having determined that there was no Confrontation Clause impediment to admitting the statements, the trial court addressed the hearsay objection and determined that Collins's statements were admissible under the present sense impression exception to the hearsay rule, which authorizes the admissibility of "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter[,]" regardless of the declarant's availability. OCGA § 24-8-803 (1).

(i) *Confrontation Clause.* Based upon our review of the record and for the reasons set forth below, we conclude that Collins's statements at the scene to Officer Poole were offered primarily to assist police in meeting an ongoing emergency, and are, therefore, nontestimonial in nature. As such, the complained-of statements to Officer Poole do not implicate the Confrontation Clause, as the trial court determined. On the other hand, with respect to the statements Collins made to Officer Davis, we conclude that, even assuming their admission violated the Confrontation Clause, the error was harmless beyond a reasonable doubt because they were cumulative of the statements Collins had made to Officer Poole.

"Statements are nontestimonial when made in the course of police

10

interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." (Citation and punctuation omitted.) *Thomas v. State*, 284 Ga. 540, 543 (2) (668 SE2d 711) (2008). Whether the "primary purpose" of a communication between police and a declarant is part of an "ongoing emergency" is a matter of "objective fact" for the court to evaluate. *Michigan v. Bryant*, 562 U. S. 344, 360 (III) (131 SCt 1143, 179 LE2d 93) (2011). See also *State v. Gunn*, 333 Ga. App. 893, 895 (777 SE2d 722) (2015) ("[W]hether an emergency exists and remains ongoing is a highly context-dependent inquiry." (punctuation, footnote and emphasis omitted)); *Philpot v. State*, 309 Ga. App. 196, 205 (1) (b) (709 SE2d 831) (2011) (The court "should seek to ascertain, if possible, the primary purpose of the interrogation by objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs." (punctuation and footnote omitted)).

In this case, the trial court reviewed the officers' questions and Collins's responses "considering all of the circumstances, including the nature of the threat, the formality of the exchange, and, from an objective perspective, the

likely motive of [Collins] as well as the intent of both individuals at [the] time and place" the statements were made. The court noted that the police arrived at the crime scene within minutes of Collins's discovery of Hall's body. Collins was aware that the killing had occurred recently and that he had been present in the store at or close to the time of the killing. The victim's cause of death was then unknown, but it was apparent that she had died violently. Collins spoke with Officer Poole as other officers moved through and around the store with pistols drawn, looking for suspects who might be armed, who might be in the immediate vicinity, and who might pose a threat to others. Collins, who was visibly shaken and upset by the incident, told Officer Poole what he had just witnessed as they were securing the scene.

Additionally, the trial court found that Officer Davis questioned Collins in the police car after police had secured the scene with the intent "to obtain information for a ['be on the lookout'] alert for the suspect and any vehicle linked to the suspect." Although the alert was never issued, the court nevertheless concluded that Officer Davis's questioning was meant "to quell the ongoing emergency presented by an armed attacker at large." Officer Davis testified that Collins spoke candidly as he "energetically recounted the same

12

facts." Given that Collins was possibly under the influence of alcohol, the police waited until the following day to formally interview him.

Based upon our review of the record, we conclude that the trial court conducted the appropriate inquiry. With respect to Collins's statements to Officer Poole, the trial court properly concluded that Collins's statements were nontestimonial in that they were not intended to establish or prove a past fact; rather, they were intended to describe current circumstances that required immediate police action, that is, securing a crime scene and determining whether an armed killer might still be in the vicinity. See *Johnson v. State*, 294 Ga. 86, 91 (6) (750 SE2d 347) (2013) ("Here, the challenged statements were made by the victim of the prior crime to a law enforcement officer minutes after the crime to meet an ongoing emergency; therefore, they were not testimonial and their admission was not prohibited by the Confrontation Clause." (citation omitted)).

With respect to the statements that Collins made to Officer Davis in the patrol car, even assuming that those statements were testimonial, they are cumulative of the statements made to Officer Poole. They are also, to some extent, cumulative of the statements Collins made to Carnes and the statements Collins made to the detective at the police station the day after the murder.

13

Further, they are also cumulative of that portion of McCord's testimony where McCord admitted that he saw Collins in the store and gave him a pack of cigarettes. Finally, the other evidence against McCord was strong. Therefore, even if the admission of Collins's statement to Officer Davis violated the Confrontation Clause, the error was harmless beyond a reasonable doubt. See *Brown v. State*, 288 Ga. 404, 408 (3) (703 SE2d 624) (2010) (admission of hearsay that was testimonial in nature was harmless beyond a reasonable doubt where it was cumulative of other admissible evidence).

(ii) *Hearsay*. After finding no violation of the Confrontation Clause, the trial court then determined that Collins's statements to the officers while he was at the scene of the crime were admissible pursuant to the present sense impression exception to the hearsay rule. After an evidentiary hearing, the trial court concluded that Collins made his statements to those officers shortly after discovering Hall's body, that Collins was visibly upset, and that his "blurted-out responses" demonstrated that he was still in the grip of an emotional trauma. These statements, the court concluded "were substantially contemporaneous [with the events witnessed] so as to dispel concerns about misrepresentation." McCord argues that, because approximately 20 minutes had passed from the

time Collins observed the disturbance inside the store to the time he made his statements to the officers, the statements lack the "contemporaneity" required to qualify as present sense impressions.

Pretermitting whether the court erred in admitting Collins's statements under the present sense impression exception, the findings made by the trial court show that they were nevertheless admissible as excited utterances. OCGA § 24-8-803 (2) provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" may be admitted into evidence under the excited utterance exception to the rule against hearsay.

In this case, the court made an express finding that Collins's statements were uttered to the officers at the scene while he was emotionally traumatized, and the record supports that finding. See *Robbins v. State*, 300 Ga. 387, 389-390 (2) (793 SE2d 62) (2016) ("While the declarant must still be under the stress or excitement that the startling event caused, the excited utterance need not be made contemporaneously to the startling event. It is the totality of the circumstances, not simply the length of time that has passed between the event and the statement, that determines whether a hearsay statement was an excited

15

utterance." (citations omitted)). Given that the statements were admissible as excited utterances, McCord has not shown that the trial court erred in admitting them. See *United States v. Jiminez*, 564 F3d 1280, 1288-1289 (III) (11th Cir. 2009) ("The law in our Circuit is clear that even when the trial judge admits testimony for a stated reason that is improper under the Federal Rules of Evidence, the decision generally will be upheld so long as the testimony is properly admissible on other, non-stated grounds apparent from the record." (citations omitted)).

(b) Following a pretrial hearing on McCord's motion to exclude Collins's statements to Carnes on hearsay grounds, the trial court ruled that Collins's description

> to [Carnes] of his visit to the Golden Pantry fifteen minutes earlier, after which he concluded something was probably wrong, followed by his outcry upon discovering the victim, are admissible hearsay under the exception for an excited utterance. OCGA § 24-8-803 (2). The statements relate to the startling events of hearing a disruption coming from the office that caused growing concern and then actually seeing the victim, and were made when Mr. Collins was experiencing the initial emotional impact and was under the stress of excitement caused by the events.

McCord argues that the trial court erred in finding that all of Collins's

16

statements to Carnes were admissible as excited utterances.[4] Specifically, he argues that most of Collins's statements to Carnes were made before Collins found Hall's body and, therefore, Collins was not subject to the excitement and stress caused by that startling event. McCord further contends that, if Collins had been truly startled or distressed by the disturbance he had heard earlier, he would not have returned to the store.

Pretermitting whether the trial court abused its discretion in admitting any statement that Collins made to Carnes prior to finding the victim's body, any error was harmless in light of the fact that Collins's statements to Carnes were cumulative of the statements he gave to Officer Poole at the scene after he found the body, statements that were admissible as nontestimonial excited utterances. See Division 2 (a) (ii), supra.

Judgment affirmed. All the Justices concur.

---

[4] McCord does not challenge the admission of *Carnes's* statements on hearsay grounds or contend that a "hearsay within hearsay" problem exists. The record shows that, in a pretrial hearing concerning the admission on Collins's statements to various witnesses, Carnes testified as to what Collins had told him. After Carnes died, the State moved to admit Carnes's testimony as a deceased witness who had previously testified and been cross-examined by defense counsel on the same issue. The court found that McCord had an opportunity and similar motive to develop Carnes's testimony and ruled that it was admissible pursuant to the unavailable declarant exception to the hearsay rule set forth in OCGA § 24-8-804 (b) (1). McCord does not challenge this ruling.

17

Decided March 4, 2019.

Murder. Clarke Superior Court. Before Judge Sweat.

Adam S. Levin, for appellant.

Kenneth W. Mauldin, District Attorney, James V. Chafin, Danielle M. Fargione, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.